JASON M. INGBER (SBN 318323)
**LEVI & KORSINSKY, LLP**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, California 90010-2513
Telephone: (213) 805-8373
Email: jingber@zlk.com

*Attorney for Plaintiff and the Proposed Class*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE NULL, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>TAYLOR FRESH FOODS, INC. d/b/a TAYLOR FARMS, and TACO BELL CORP.,<br><br>　　　Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**NATURE OF THE ACTION**

1.　　Plaintiff brings this class action against Taylor Farms and Taco Bell Corp. arising from the sale of iceberg lettuce that was adulterated, unfit for human consumption, and worthless at the point of sale. In 2026, federal public-health authorities linked a nationwide outbreak of cyclosporiasis, a parasitic infection, to iceberg lettuce that Taylor Farms produced and supplied. Consumers who purchased food containing that lettuce paid for a wholesome, merchantable product and received an adulterated one.

2.     This is an economic-loss case, not a personal-injury case. Plaintiff does not seek recovery for bodily injury. Plaintiff seeks to recover, on behalf of himself and a class of purchasers, the money they paid for products they would not have purchased, or would have paid less for, had Defendants disclosed that the lettuce was contaminated and could not lawfully be sold. Every class member suffered the same economic injury the moment the transaction closed: each paid full price for food that was worth less than represented, and in law was worthless because it could not be sold for human consumption.

3.     Food that bears or contains a poisonous or deleterious substance, or that is prepared, packed, or held under insanitary conditions whereby it may have become contaminated, is adulterated under 21 U.S.C. § 342 and cannot lawfully enter commerce. Defendants nonetheless sold that lettuce to consumers as ordinary, wholesome food. Defendants' conduct violated the consumer-protection law of West Virginia, breached the warranties that accompany the sale of food, and unjustly enriched Defendants at the class's expense.

4.     Taylor Farms is no stranger to this harm. Public-health authorities have tied Taylor Farms produce to prior outbreaks, including a 2013 cyclosporiasis outbreak linked to Taylor Farms[1] salad mix and a 2024 E. coli outbreak linked to onions Taylor Farms supplied to a national restaurant chain.[2] That history put Taylor Farms on notice of the contamination risk in its supply chain.

---

[1]     *Multistate Cyclospora Outbreak*, CDC (Feb. 20, 2024) https://www.cdc.gov/orr/responses/multistate-cyclospora-outbreak.html (last visited July 20, 2026).

[2] *Outbreak Investigation of E. coli O157:H7: Onions (October 2024)*, U.S. FOOD & DRUG ADMINISTRATION (Dec. 3, 2024) https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-e-coli-o157h7-onions-october-2024 (last updated July 20, 2026).

2
CLASS ACTION COMPLAINT

**PARTIES**

5.     Plaintiff Lawrence Null is a citizen of the State of West Virginia. On June 29, 2026, during the Class Period, Plaintiff purchased and paid for three Cheesy Bean and Rice Burritos (with added iceberg lettuce) and one Mini Taco Salad at the Taco Bell located at 500 Washington Street, Ravenswood, West Virginia 26164. Plaintiff would not have purchased the products, or would not have paid the price he paid, had he known the lettuce was contaminated and could not lawfully be sold for human consumption. Plaintiff suffered economic injury as a direct and proximate result of Defendants' conduct.

6.     Defendant Taylor Fresh Foods, Inc., doing business as Taylor Farms ("Taylor Farms"), is a Delaware corporation and has its principal place of business in Salinas, California. Taylor Farms is one of the largest producers of fresh lettuce and cut vegetables in the United States, with reported annual revenue of approximately $7 billion. It supplies lettuce and other produce to national restaurant chains and sells packaged salad products at national retailers.

7.     Defendant Taco Bell Corp. ("Taco Bell") is a corporation organized under the laws of California with its principal place of business at 1 Glen Bell Way, Irvine, California 92618. Taco Bell operates and franchises quick-service restaurants throughout the United States and, during the Class Period, sold food containing iceberg lettuce that Taylor Farms supplied.

8.     Taylor Farms and Taco Bell are referred to together as "Defendants."

**JURISDICTION AND VENUE**

9.     This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed class contains more than 100 members; and at least one class member is a citizen of a state different from at

CLASS ACTION COMPLAINT

least one Defendant. Minimal diversity exists because Defendants are citizens of California and members of the proposed class are citizens of other states.

10. This Court has personal jurisdiction over each Defendant. Taco Bell maintains its principal place of business in this District, and Taylor Farms maintains its principal place of business in California. Each Defendant is at home in California and is subject to general personal jurisdiction here.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because each Defendant resides in California and Taco Bell resides in this District, where it maintains its headquarters. Venue is also proper under 28 U.S.C. § 1391(b)(2) to the extent a substantial part of the events giving rise to the claims, including Defendants' supply-chain, procurement, and marketing decisions, occurred in this District.

<strong>FACTUAL ALLEGATIONS</strong>

**A. Taylor Farms and Its Role in the Food Supply.**

12. Taylor Farms produces and supplies fresh-cut lettuce and vegetables on a national scale. Its packaged salad products are sold at major retailers, including Walmart, Whole Foods, and Target, and it is a leading supplier of lettuce and other produce to national restaurant chains, including Taco Bell.[3]

13. Taylor Farms sold and distributed the iceberg lettuce at issue with the representation, express or implied, that it was wholesome food fit for human consumption. Taco Bell in turn served that lettuce to consumers as an ordinary, safe ingredient in the food it sold.

---

[3] Christina Jewett, et al., *Cyclospora Linked to Taylor Farms Lettuce Sent to Taco Bell*, THE NEW YORK TIMES (July 16, 2026) https://www.nytimes.com/2026/07/16/well/cyclospora-taylor-farms-lettuce-taco-bell.html (last visited July 20, 2026).

**B. The 2026 Cyclospora Outbreak and the Traceback to Taylor Farms.**

14.     Cyclosporiasis is an intestinal infection caused by the Cyclospora parasite. The parasite spreads through food or water contaminated with feces. Its presence in food renders that food unfit for human consumption and adulterated within the meaning of federal and state law.

15.     In 2026, the Centers for Disease Control and Prevention ("CDC") investigated a nationwide surge in cyclosporiasis. As of the dates alleged, the CDC had confirmed more than 1,600 cases and more than 140 hospitalizations across dozens of states, and it was investigating thousands of additional suspected illnesses. The year is on track to record more cyclosporiasis cases than any prior year.[4]

16.     The CDC linked one outbreak to iceberg lettuce that Taylor Farms supplied to Taco Bell.[5] The affected shredded iceberg lettuce was distributed to Taco Bell restaurants in Indiana, Kentucky, Michigan, Ohio, and West Virginia. The CDC advised the public not to eat shredded iceberg lettuce served at Taco Bell locations in those states.[6] More than 1,600 people who fell ill reported eating at Taco Bell before becoming sick, and at least 94 were hospitalized.

17.     The Food and Drug Administration ("FDA") reported that the lettuce was grown by a single supplier in Mexico and increased screening of that supplier's lettuce at the border. The FDA further advised that other restaurants and retail stores may be implicated as its investigation continued.

---

[4]  *Surveillance of Cyclosporiasis*, CDC (July 15, 2026) https://www.cdc.gov/cyclosporiasis/php/surveillance/index.html (last visited July 20, 2026).

[5]  *Cyclospora Outbreak Linked to Iceberg Lettuce in 5 States*, CDC (July 18, 2026) https://www.cdc.gov/cyclosporiasis/outbreaks/07-26/index.html (last visited July 20, 2026).

[6]  *Id.*

**C. The Recall and Removal of the Adulterated Lettuce.**

18.    After the traceback, Taco Bell stated that it was voluntarily removing the potentially affected lettuce it had received from its supplier, that it would remove that supplier's lettuce from its supply chain nationwide, and that it would replace the lettuce.[7] Defendants' removal of the lettuce confirms that the product was not fit for sale and should never have been sold to consumers.

19.    The contaminated lettuce was adulterated under 21 U.S.C. § 342 and parallel state law because it bore or contained a poisonous or deleterious substance and was prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth. Adulterated food may not lawfully be introduced into commerce. It had no lawful market value as human food at the point of sale.

**D. Taylor Farms's History of Contamination Outbreaks.**

20.    The 2026 outbreak was not Taylor Farms's first. In 2013, public-health authorities linked a multistate cyclosporiasis outbreak to Taylor Farms salad mix that sickened hundreds of people.[8] In 2024, public-health authorities considered Taylor Farms the likely source of an E. coli outbreak tied to onions served at a national restaurant chain, an outbreak that caused more than 100 illnesses, dozens of hospitalizations, and one death.[9]

---

[7] Christina Jewett, et al., *Cyclospora Linked to Taylor Farms Lettuce Sent to Taco Bell*, THE NEW YORK TIMES (July 16, 2026) https://www.nytimes.com/2026/07/16/well/cyclospora-taylor-farms-lettuce-taco-bell.html (last visited July 20, 2026).

[8] *Multistate Cyclospora Outbreak*, CDC (Feb. 20, 2024) https://www.cdc.gov/orr/responses/multistate-cyclospora-outbreak.html (last visited July 20, 2026).

[9] *Outbreak Investigation of E. coli O157:H7: Onions (October 2024)*, U.S. FOOD & DRUG ADMINISTRATION (Dec. 3, 2024) https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-e-coli-o157h7-onions-october-2024 (last updated July 20, 2026).

CLASS ACTION COMPLAINT

21.    These prior outbreaks put Taylor Farms on actual notice of the risk of parasitic and bacterial contamination in its produce supply chain. Taylor Farms nonetheless failed to prevent the contamination alleged here. Its conduct was knowing, reckless, and willful.

**E. The Class's Economic Injury.**

22.    Plaintiff and the class paid for wholesome food fit for human consumption. They received adulterated food that could not lawfully be sold and was worth less than they paid, and in law was worthless as human food. The difference between the price paid and the value received is the class's economic loss.

23.    Plaintiff and the class did not receive the benefit of their bargain. Had Defendants disclosed that the lettuce was contaminated and could not lawfully be sold, no reasonable consumer would have purchased the affected products, or any consumer would have paid substantially less. The economic injury is common to every class member and is measurable on a classwide basis from Defendants' sales and pricing records.

**CLASS ACTION ALLEGATIONS**

24.    Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and the following Class and Subclasses (collectively, the "Class"):

> **Nationwide Class:** All persons in the United States who, during the Class Period, purchased one or more Affected Products.

> **West Virginia Subclass:** All members of the Nationwide Class who purchased Affected Products in West Virginia.

25.    "Affected Products" means (a) food sold at Taco Bell restaurants that contained iceberg lettuce Taylor Farms supplied, and that was subject to removal or recall, and (b) Taylor Farms iceberg lettuce and lettuce-containing products

7

CLASS ACTION COMPLAINT

distributed through retail or foodservice channels that were subject to removal or recall. "Class Period" means the period from May 1, 2026 through the date of final judgment.

26. Excluded from the Class are Defendants; their officers, directors, employees, and affiliates; the judicial officers assigned to this case and their staff.

27. **Numerosity.** The Class contains thousands of members and is so numerous that joinder of all members is impracticable. Taylor Farms and Taco Bell distributed and sold the Affected Products at scale across many states. The precise number of class members and their identities can be determined from Defendants' records.

28. **Commonality.** Common questions of law and fact exist as to all class members, including: whether the lettuce was adulterated and unfit for human consumption; whether the Affected Products could lawfully be sold; whether Defendants represented, expressly or by implication, that the products were wholesome and fit for consumption; whether Defendants' conduct violated the consumer-protection law pleaded below; whether Defendants breached the implied warranty of merchantability; whether Defendants were unjustly enriched; and the proper measure of classwide restitution and damages.

29. **Typicality.** Plaintiff's claims are typical of the claims of the Class. Plaintiff and every class member purchased the same adulterated product from the same supply chain and suffered the same economic injury arising from the same course of conduct.

30. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and has retained counsel experienced in consumer class actions who will vigorously prosecute this action.

31. **Predominance and Superiority.** Questions common to the Class predominate over any individual questions. Liability turns on Defendants' uniform

CLASS ACTION COMPLAINT

conduct, and injury and damages can be established on a classwide basis from Defendants' sales and pricing data without individualized proof of illness. A class action is superior to other methods of adjudication because the cost of individually litigating each small-dollar claim would exceed any individual recovery, and classwide treatment avoids inconsistent results and conserves judicial resources.

32.     **Rule 23(b)(2).** Defendants acted on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief appropriate for the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the West Virginia Consumer Credit and Protection Act
W. Va. Code §§ 46A-6-101 et seq.**

*(On Behalf of Plaintiff and the West Virginia Subclass)*

33.     Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

34.     The West Virginia Consumer Credit and Protection Act ("WVCCPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. The WVCCPA is to be liberally construed so that its beneficial purposes may be served. W. Va. Code § 46A-6-101.

35.     Plaintiff and each member of the West Virginia Subclass are consumers who purchased goods, and Defendants are persons who engaged in trade or commerce, within the meaning of the WVCCPA. W. Va. Code § 46A-6-102. The sale of the Affected Products occurred in the conduct of trade or commerce.

36.     Defendants engaged in unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-104 by representing, expressly and by implication, that the Affected Products were wholesome food of merchantable quality and fit for

9
CLASS ACTION COMPLAINT

human consumption, when in fact the lettuce was adulterated, unfit for human consumption, and could not lawfully be sold.

37.    Defendants further engaged in unfair or deceptive acts or practices by failing to disclose, and by concealing, material facts they had a duty to disclose, namely, that the lettuce was contaminated with Cyclospora, was adulterated within the meaning of federal and West Virginia law, and could not lawfully be introduced into commerce. These facts were known or reasonably knowable to Defendants and were not reasonably discoverable by consumers.

38.    The wholesomeness and safety of food, and whether food may lawfully be sold for human consumption, are material to reasonable consumers. Had Defendants disclosed the truth, no reasonable consumer would have purchased the Affected Products, or any reasonable consumer would have paid substantially less for them.

39.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the West Virginia Subclass suffered an ascertainable loss of money or property: they paid for wholesome food and received adulterated food that was worth less than the price paid and, in law, was worthless as human food. Plaintiff and the West Virginia Subclass suffered an actual out-of-pocket loss proximately caused by Defendants' violations. W. Va. Code § 46A-6-106(b).

40.    Plaintiff and the West Virginia Subclass are entitled to recover actual damages or $200 per violation, whichever is greater, together with such equitable relief as the Court considers necessary or proper, and their reasonable attorneys' fees and costs, pursuant to W. Va. Code § 46A-6-106 and other applicable law.

**COUNT II**
**Breach of the Implied Warranty of Merchantability**
*(On Behalf of the Nationwide Class)*

CLASS ACTION COMPLAINT

41.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

42.    Defendants are merchants with respect to food and lettuce. The sale of the Affected Products carried an implied warranty that the goods were merchantable, that is, fit for the ordinary purpose of human consumption and free of adulteration.

43.    Defendants breached that warranty. The Affected Products were adulterated, unfit for human consumption, and could not lawfully be sold. As a direct and proximate result, Plaintiff and the Class suffered economic loss equal to the price they paid for worthless or diminished-value goods.

44.    Plaintiff and the Class are the intended consumers of the Affected Products, and any privity requirement is satisfied or excused in the food context.

## COUNT III
### Unjust Enrichment
*(On Behalf of the Nationwide Class, Pleaded in the Alternative)*

45.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

46.    Plaintiff and the Class conferred a benefit on Defendants by paying for the Affected Products. Defendants knowingly accepted and retained that benefit under circumstances that make retention inequitable, because the products were adulterated and could not lawfully be sold.

47.    Equity and good conscience require Defendants to make restitution of the amounts they received for the Affected Products. This claim is pleaded in the alternative to the extent no adequate remedy at law applies.

11
CLASS ACTION COMPLAINT

## COUNT IV
### Negligence
*(On Behalf of the Nationwide Class)*

48.   Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

49.   Defendants owed Plaintiff and the Class a duty to exercise reasonable care in sourcing, growing, processing, testing, inspecting, manufacturing, packaging, storing, distributing, preparing, and selling food intended for human consumption. That duty arose independently of any contract and included the duty to comply with applicable food-safety laws and to refrain from placing adulterated food into commerce.

50.   Defendants breached their duties by, among other things, failing to implement and maintain reasonable controls sufficient to prevent Cyclospora contamination; failing adequately to inspect, test, monitor, and trace the lettuce and its supply chain; failing to ensure that the lettuce was grown, processed, packed, stored, and distributed under sanitary conditions; selling and serving adulterated lettuce; and failing timely to warn consumers or remove the Affected Products from commerce.

51.   The food-safety statutes and regulations governing adulterated food, including 21 U.S.C. § 342 and parallel state-law requirements, were enacted to protect consumers such as Plaintiff and the Class from the type of contamination and resulting harm alleged here. Defendants' violations constitute evidence of negligence and, where permitted by applicable law, negligence per se.

52.   Defendants knew or reasonably should have known that their acts and omissions created an unreasonable risk that adulterated lettuce would be sold to consumers. Taylor Farms's prior contamination outbreaks further placed it on notice of the need for adequate food-safety controls.

12
CLASS ACTION COMPLAINT

53.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class purchased food that was adulterated, unfit for human consumption, and worth less than the price paid, and in law was worthless as human food. Plaintiff and the Class suffered ascertainable economic loss, including the purchase price or the difference between the price paid and the value received.

54.     Plaintiff and the Class are entitled to compensatory damages and all other relief available under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court:

A.     Certify this action as a class action under Rule 23, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

B.     Declare that Defendants' conduct violated the statutes and common law pleaded above;

C.     Award actual, statutory, and treble damages as allowed by law, together with restitution and disgorgement of amounts Defendants received for the Affected Products;

D.     Enter injunctive relief requiring Defendants to cease the unlawful practices and to remediate the conditions that caused the contamination;

E.     Award pre- and post-judgment interest;

F.     Award attorneys' fees and costs as allowed by law; and

G.     Grant such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 21, 2026                    Respectfully submitted,

By :/s/ *Jason M. Ingber*
Jason M. Ingber (SBN 318323)
**LEVI & KORSINSKY, LLP**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90010-2513
Phone: 213-805-8373
Email: jingber@zlk.com

*Attorney for Plaintiff and*
*the Proposed Class*

14
CLASS ACTION COMPLAINT